**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

KTF:MOM
F. #2026R00647

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 24, 2026

By ECF

The Honorable Lara K. Eshkenazi
United States Magistrate Judge
United States District Court for the New York Eastern District
225 Cadman Plaza East
Brooklyn, NY 11201

Re: In re Extradition of Carnel Augustus Young,
Case No. 26-MJ-182

Dear Judge Eshkenazi,

The Government of Canada has requested the provisional arrest of Carnel Augustus Young ("Young") with a view toward extradition, pursuant to the extradition treaty between the United States and Canada,[1] so that Young may face prosecution for importing cocaine, in violation of section 6(1) of the Controlled Drugs and Substances Act of Canada. On September 24, 2026, Young was arrested in this District based on a complaint and warrant that issued on September 22, 2026, pursuant to the Treaty and 18 U.S.C. § 3184. The United States intends to seek a certification that Young, a citizen of the United States, is extraditable.

We respectfully submit this letter to provide the Court with a brief overview of the law that governs extradition proceedings, including in bail determinations. As set forth below, unlike in criminal cases, there is a strong presumption against bail in international extradition proceedings. To justify bail, a fugitive must establish that he is not a flight risk or a danger to the community, and that "special circumstances" warrant bail. We respectfully submit that Young will be unable to make that showing here, and that he should be detained.

---

[1] Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, as amended by Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. Treaty Doc. No. 101-17 (1990); and Second Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 12, 2001, S. Treaty Doc. No. 107-11 (2002) (collectively, the "Treaty").

## I. General Overview of Executive and Judicial Responsibilities in Extradition Proceedings

International extradition is primarily an executive function, with a limited role for the judiciary pursuant to the federal extradition statute. Under the statute, the Court's role is to determine whether (1) it is authorized to conduct the extradition proceeding; (2) it has jurisdiction over the fugitive; (3) the applicable extradition treaty is in full force and effect; (4) the treaty covers the crime for which extradition is requested; and (5) the evidence supports a finding of probable cause as to the charge for which extradition is sought. See 18 U.S.C. § 3184; see also Skaftouros v. United States, 667 F.3d 144, 154-55 (2d Cir. 2011). "If the judicial officer answers these questions in the affirmative, he or she 'shall certify' the extraditability of the fugitive to the Secretary of State." Cheung v. United States, 213 F.3d 82, 88 (2d Cir. 2000) (quoting 18 U.S.C. § 3184). The Secretary of State, and not the Court, then makes the final, discretionary determination whether the fugitive should be surrendered to the requesting country. See 18 U.S.C. §§ 3184, 3186; Lo Duca v. United States, 93 F.3d 1100, 1103-04 (2d Cir. 1996).

Given the limited nature of extradition proceedings, fugitives lack most of the protections afforded to criminal defendants. Neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply. At the extradition hearing, hearsay is admissible, unsworn statements of absent witnesses can be considered, and fugitives have no right to confrontation or cross-examination. See, e.g., Skaftouros, 667 F.3d at 155 n.16 (collecting cases). As a result, the Court can make the requisite determination of extraditability solely on a written record, without hearing from any live witnesses. Further, the fugitive's ability to put on defenses is highly circumscribed, see, e.g., Charlton v. Kelly, 229 U.S. 447, 461 (1913) (no right to assert affirmative defenses), and there is no right to discovery, see, e.g., Messina v. United States, 728 F.2d 77, 80 (2d Cir. 1984).

## II. To Overcome the Presumption Against Bail In International Extradition Proceedings, the Fugitive Must Show that He Presents Neither a Flight Risk Nor a Danger to the Community, and that "Special Circumstances" Warrant Bail

No statutory authority expressly permits bail in extradition proceedings. The statutes governing extradition, 18 U.S.C. §§ 3181 et seq., do not provide for bail, and the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., does not apply because an extradition proceeding is not a criminal prosecution.[2] See, e.g., Austin v. Healey, 5 F.3d 598, 603 (2d Cir. 1993); Borodin v. Ashcroft, 136 F. Supp. 2d 125, 128 (E.D.N.Y. 2001). And courts have long recognized a "presumption against bail in extradition cases." United States v. Leitner, 784 F.2d 159, 160 (2d Cir. 1986) (per curiam); see also Wright v. Henkel, 190 U.S. 40, 63 (1903). This presumption is necessitated by the "United States Government's overriding interest in complying with its treaty obligations," and the serious embarrassment that would result if a fugitive were to abscond after being released on bail. In re Extradition of Garcia, 615 F. Supp. 2d 162, 166 (S.D.N.Y. 2009).

[2] The Bail Reform Act applies only to "offenses" in violation of U.S. law that are triable in U.S. courts. See 18 U.S.C. §§ 3141(a), 3142, and 3156(a)(2). Here, Young is not charged with an "offense" within the meaning of 18 U.S.C. § 3156, but, rather, with an offense in violation of Canadian law.

Given the United States' overriding interest, and the presumption against bail, "release on bail in extradition cases should be an unusual and extraordinary thing." Borodin, 136 F. Supp. 2d at 128 (internal quotation marks and citations omitted). A fugitive cannot be released pending his extradition hearing unless he establishes that he is neither a flight risk nor a danger to the community, and that additional "special circumstances" warrant release. See, e.g., Leitner, 784 F.2d at 160. This "special circumstances" standard is "much stricter than the 'reasonable assurance' of appearance standard made applicable to domestic criminal proceedings by the Bail Reform Act." In re Extradition of Lui, 913 F. Supp. 50, 53 (D. Mass. 1996).

Courts have considered and rejected a lengthy list of would-be special circumstances, including a low risk of flight. See Leitner, 784 F.2d at 161; Garcia, 615 F. Supp. 2d at 173; Borodin, 136 F. Supp. 2d at 130. Courts have found that the following circumstances do not qualify as "special circumstances": (1) the fugitive's need to consult with his attorney and/or participate in pending litigation, see In re Extradition of Rovelli, 977 F. Supp. 566, 569 (D. Conn. 1997); (2) the complexity of the pending litigation, see United States v. Kin-Hong, 83 F.3d 523, 525 (1st Cir. 1996); United States v. Tang Yee-Chun, 657 F. Supp. 1270, 1271-72 (S.D.N.Y. 1987); (3) the fugitive's character, background, or ties to the community, see Leitner, 784 F.2d at 160-61; Duran v. United States, 36 F. Supp. 2d 622, 628 (S.D.N.Y. 1999); In re Extradition of Beresford-Redman, 753 F. Supp. 2d 1078, 1089-90 (C.D. Cal. 2010); (4) health issues, including discomfort, dietary needs, or associated health concerns while incarcerated, see Garcia, 615 F. Supp. 2d at 173-74; In re Extradition of Hamilton-Byrne, 831 F. Supp. 287, 290-91 (S.D.N.Y. 1992) (allowing for possibility of bail if a "health emergency" could "only be treated" while on bail); (5) citizenship or pendency of naturalization proceedings, see In re Extradition of Sacirbegovic, 280 F. Supp. 2d 81, 84 (S.D.N.Y. 2003); In re Extradition of Antonowicz, 244 F. Supp. 3d 1066, 1072 (C.D. Cal. 2017); (6) political or professional status, see Borodin, 136 F. Supp. 2d at 131; (7) the availability of electronic monitoring, see Rovelli, 977 F. Supp. at 569; (8) ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings, see In re Klein, 46 F.2d 85, 85 (S.D.N.Y. 1930); (9) the probability of success at the extradition hearing, see Sacirbegovic, 280 F. Supp. 2d at 88; and (10) the availability of bail for the same offense in the requesting country, see Garcia, 615 F. Supp. 2d at 172.

To be sure, while these factors have been rejected as proposed special circumstances, in an exceptional case a confluence of these factors may be sufficient to satisfy the standard. See Sacirbegovic, 280 F. Supp. 2d at 88 (collecting cases). Such findings are highly case-specific and within the discretion of the court, mindful of the strong presumption against bail and the future reciprocity of other countries at stake.

## III. Young Is a Flight Risk and a Danger to the Community, and No Special Circumstances Warrant His Release

The Court should detain Young without bond because he is a danger to the community and a flight risk and because there do not appear to be any special circumstances that can overcome the strong presumption against bail.

Young is a flight risk. He fled Canada after being released on bail. He has not returned to Canada since. A fugitive charged with a crime in another country is already, by definition, in flight or deliberately absent from that jurisdiction. See United States v. Botero, 604 F. Supp. 1028, 1035

(S.D. Fla. 1985) ("In the context of determining whether a defendant poses a substantial risk of flight, this Court does not find any meaningful distinction between a person who left the country when he learned of pending charges and one who already outside the country refuses to return to face these charges. The intent is the same—the avoidance of prosecution.") (citing Jhirad v. Ferrandina, 536 F.2d 478, 483 (2d Cir. 1976)).

Young also has ties to a third country, namely, Jamaica. According to Canadian authorities, Young was born in Jamaica and imported the cocaine on a flight from Jamaica.

Further, given the strength of Canada's case and the United States' relatively low burden of proof in extradition hearings, Young now has strong incentive to flee further, whether to a third country or to an underground location within the United States. See, e.g., In re Extradition of Garcia, 761 F. Supp. 2d 468, 483 (S.D. Tex. 2010) ("The Court believes that [fugitive]'s risk of flight is beyond a 'tolerable risk.' He has virtually no incentive to appear at his extradition hearing, where, due to the United States' low burden of proof, there are significant risks that he will be formally extradited to Mexico."); In re Extradition of Adame, 2013 WL 1222115, at *3 (S.D. Tex. Mar. 25, 2013) (the fugitive "has virtually no incentive to appear at his extradition hearing, where, due to the Government's low burden of proof, there is a significant risk that he will be formally extradited to Mexico"). Moreover, the prospect of a lengthy prison sentence in Canada heightens Young's incentive to flee. See, e.g., In re Extradition of Martinelli Berrocal, 263 F. Supp. 3d 1280, 1305 (S.D. Fla. July 7, 2017) (sixty-six years of age and potential twenty-one-year sentence "materially contribute[d] to [the fugitive's] high risk of flight"); In re Extradition of Shaw, No. 14-MC-81475-WM, 2015 WL 521183, at *9 (S.D. Fla. Feb. 6, 2015) (noting that "the [fugitive] is facing serious criminal sanctions in Thailand, which fact provides him with a strong incentive to flee"). The flight risk he poses is, alone, fatal to any bail application.

Additionally, the serious nature of the Canadian charge, and Young's criminal history in the United States, reflect that Young poses a danger to the community. See, e.g., In re Perez-Cueva, No. 16-0233M, 2016 WL 884877, at *3 (C.D. Cal. Mar. 7, 2016) (seriousness of allegations against fugitive "militates against release on bail"). This dangerousness renders bail inappropriate. Since Young fled to the United States, he has been arrested twice – once in 2023 and once in 2024 – for possession of cocaine with intent to distribute, with the latter arrest resulting in a conviction. See Dkt. No. 36 (Judgment), United States v. Young, Case No. 2:24-cr-20038 (W.D. Tenn.). The danger he poses also renders bail inappropriate.

Even if Young could establish that he poses neither a flight risk nor a danger to the community, the United States is unaware of any "special circumstances" that would justify bail in this case. Cf. In re Drumm, 150 F. Supp. 3d 92, 97-100 (D. Mass. 2015) (denying bail because of a failure to show a special circumstance, even though the court found that defendant posed no danger to the community and defendant's risk of flight could be adequately mitigated).

Allowing bail in any amount, under any conditions, would not reasonably ensure Young's presence in court and would invite the possibility of embarrassing the United States in conducting its foreign affairs.

Should, however, the Court be inclined to grant bail in this case, the United States respectfully requests that the Court submit special written findings as to those specific matters that

are found to constitute "special circumstances." Moreover, to protect the ability of the United States to meet its treaty obligations to Canada, the United States also requests that the Court notify the parties within a reasonable amount of time in advance of any contemplated release order so that the United States can consider the matter of whether, under the circumstances, to seek a stay pending possible appeal on the bail issue.

For the foregoing reasons, the United States requests that Young be detained pending resolution of this extradition proceeding.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/ Michael McGuinness
Michael McGuinness
Assistant U.S. Attorney
(718) 254-6023